# EXHIBIT A

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| JOHN DESCH, a married individual,<br><br>                                  Plaintiff,<br><br>v.<br><br>ALLEGIANT AIR, LLC, a Nevada Corporation, JOHN and JANE DOE I-X; and ABC COMPANIES I-X,<br><br>                                Defendants. | NO. 12-CV-01738-PHX-SPL |

STATE OF INDIANA  )
COUNTY OF Hendricks )

### AFFIDAVIT OF LEONARD SWOPE

BEFORE ME, the undersigned Notary Public, on this day personally appeared Leonard Swope, who being by me first duly sworn, upon his oath stated as follows:

1. My name is Leonard Swope. I am over the age of 21 years and have personal knowledge of the matters set forth in this affidavit. My experience as Principal Maintenance Inspector and Supervisor of the Airworthiness Section at the Indianapolis Flight Standards District Office for the Federal Aviation Administration, United States Department of Transportation, was preceded by many years as a certified Airframe and Powerplant aircraft mechanic with experience on large, commercial aircraft, as a Principal Maintenance Inspector for an airline, and Air-carrier Aviation Maintenance Safety Inspector. A full recitation of my background, credentials, and experience is set

forth in my declaration dated June 16, 2014. Attached hereto and incorporated by reference is my declaration dated June 16, 2014. It is true and correct.

2.      Allegiant provided additional aircraft service records (a "Service Check" form checklist, and computerized aircraft work orders dated June 3, 2010 through July 23, 2010, were provided to me on August 18, 2014, the day before my deposition that was scheduled in this case). The facts and opinions set out in this Affidavit and in the attached declaration are based on my education, training, and experience, as well as the records produced by the Flagstaff Police Department and Allegiant Air in this case before and after my report and declaration.

3.      On July 25, 2010, the crew of Allegiant Air flight number 645 declared an emergency and diverted the flight to Flagstaff, Arizona because of a cockpit indication of an in-flight fire condition in the right engine.

4.      The most likely cause of the warning of engine fire or overheating indication was the alternating current (AC) generator or the Constant Speed Drive (CSD) on the right engine. The Flagstaff airport fire department opened the cowling of the right engine on the ground and found that the generator had suffered a catastrophic failure.

5.      Allegiant removed the right engine from the aircraft immediately after the incident. The engine was the sent to TIMCO as part of an investigation intended to determine the cause of the engine-related emergency; however, Allegiant had removed the CSD and generator from the engine before submitting the engine to TIMCO for a failure analysis. Therefore, it appears that TIMCO never examined or tested the CSD or generator.

6. TIMCO did not find the cause of the failure because Allegiant did not provide those parts.

7. Allegiant has never articulated what the failure was in the CSD or generator. It is inconceivable that something as clear and threatening to safety as an engine fire warning was not fully investigated to find a root cause so such failures could be prevented in the future.

8. Allegiant's records show a history of poor maintenance practices as a habit and routine practice.

9. Poor maintenance of the CSD/generator is indicated by Allegiant's records showing an abnormally large number of instances of overheating of the CSD requiring oil servicing. The overheating events in Allegiant's logs are evidence of the unit using oil. Proper maintenance procedures for Allegiant's reliability program should have included a requirement that the amount of oil added be recorded. Allegiant's records do not contain a block for indicating the amount of oil added in the maintenance and flight log. Allegiant does not have a procedure to record the amount of oil added to the CSD. If, as the records indicate, the CSD was using oil excessively, the failure to repair or replace the defective part is the most likely cause of the engine fire warning that manifested on the date of the incident and caused the emergency.

10. Therefore, it is more likely than not that the incident was caused by a CSD/generator overheat because of a defective part that was improperly lubricated. Allegiant was negligent in that it failed to use ordinary care in the maintenance of the

aircraft. That negligence proximately caused the right engine fire warning event, which led to the emergency landing.

11. In addition to the above-mentioned instances of CSD oil and overheating issues, Allegiant had CSD oil and overheating issues when the right engine on the incident aircraft had been previously installed on another of Allegiant's aircraft in the left engine position:

    a. January 21, 2009: CSD leaking

    b. February 15, 2009: removed and replaced CSD oil cooler assembly

    c. February 16, 2009: right CSD oil pressure low; CSD replaced

12. In my 45 years as an aircraft mechanic, which included 35 years as an FAA airworthiness safety inspector and 14 years as a Principal Maintenance Inspector for a large airline, I have never seen so many CSD failures period, let alone on one or two aircraft. Allegiant's maintenance practices and procedures were clearly inadequate to assure the reliable operation of the CSDs and generators on its aircraft.

13. The aircraft was not airworthy per federal aviation regulations because the emergency slides were not installed, maintained and inspected to insure that they would deploy properly. Also, one of the passenger seats was positioned in a way that prevented the overwing emergency door from opening. This was an obvious discrepancy that should have been noticed by Allegiant personnel on a daily basis. It interfered with the emergency exit procedures and rendered the aircraft unairworthy and unsafe.

14. If the airplane had been checked as required by its "Service Check" checklist, the unairworthy condition of the slides should have been discovered before the

incident. A checklist item "Check condition and security of...evacuation slides." The Aircraft Work Order stating that the check was done on July 23, 2010, not noting the discrepancies that revealed themselves on the day of the occurrence (two days later), indicates that Allegiant's record keeping, maintenance and inspection practices are not accurate or reliable.

15. The records of Allegiant show that the CSDs on the subject aircraft required service multiple times in the months preceding the incident on July 25, 2010, and that there were warnings that the right CSD and generator were failing:

a. November 1, 2009: oil leaking from left CSD oil inlet coupling.

b. November 8, 2009: left CSD spline stripped out.

c. November 18, 2009: left CSD overtemperature event.

d. March 17, 2010: right CSD overtemperature and disconnect

e. March 20, 2010: right CSD overtemperature in cruise, which required a diversion to another airport

f. Allegiant's records show that the right CSD sustained an overtemperature event on March 16, 2010 and again on March 18, 2010. On June 22, 2010, there was a report that the airplane had vibration aft of row 30 during the entire flight, and the pilots alternately shut down hydraulics and reduced power to idle alternately on each engine, with the other engine at normal power on descent, all of which had no effect on the vibration. On June 23, 2010, there was another report of vibration in aft cabin during flight, again requiring mechanics to perform an engine vibration check. On June 26, 2010 there are two write-ups regarding right engine idle

anomalies during taxi. Within a reasonable degree of probability in the field of aircraft maintenance, these were all warnings that the right CSD and A/C generator were failing.

16. In my professional opinion, it is more likely than not that the CSD/generator overheat was the cause of or a contributing factor to the right engine fire warning on the day of the incident.

Executed on October 24, 2014.

*Leonard Swope*
Leonard Swope

SUBSCRIBED AND SWORN TO BEFORE ME on this the 24th day of October, 2014.

My commission expires: February 27, 2020

*June A. Cockrum*

NOTARY PUBLIC, State of Indiana

JUNE A. COCKRUM
Hendricks County
My Commission Expires
February 27, 2020

Leonard F. Swope
4149 Stone Ridge Drive
Brownsburg, IN 46112
(317) 460-0408

John Desch v. Allegiant Air

Amended Preliminary Expert Report

In compliance with Federal Rule of Civil Procedure Rule 26

Expertise: Aircraft maintenance and Federal Aviation Regulations

Aircraft Occurrence involving DC-9-83 / N880GA

Occurrence Flagstaff, AZ.

Date of occurrence July 25, 2010

## Documents and Items Reviewed:

Aircraft log Book pages 170416 Thru 170421
Flight crew reports
Cabin crew reports
FAA incident report
Parts History report for L-1 door slide PN D29982-107  S/N 0676
Parts History report for R-1 door Slide P/N D29982-107 S/N 2071
Parts history report for Tailcone Slide P/N D29984-119 S/N 0171
List of Maintenance personnel who worked on AC N880GA  (**not complete**)
N863GA Slide discrepancies (**wrong aircraft**)
N863GA door discrepancies (**wrong aircraft**)
N863GA Slide function check report (**wrong aircraft**)
Pacific Gas Turbine Receiving and shipment inventory dated 8/27/2009.
Allegiant defect report  9/10/2009  thru 7/25/2010 for aircraft N880GA
Passenger cabin inspection cards.
Flagstaff, AZ, Fire department report
Flagstaff, AZ, Police department report.
Engine information disclosure received - May 19,2014
404 DMI  list received - May 26, 2014
880 CSD DMI list received - May 26, 2014
880 DMI list received - May 26, 2014
CNN report on Allegiant Air slides dated Sept 20, 2013

## Qualifications:

See attached Resume

## Factual Information:

### ENGINES

1) On July 25, 2010, Allegiant air flight 645, a DC 9-83, N880GA, from Billings, Montana to Phoenix, Arizona. diverted to Flagstaff, Arizona due to an engine fire warning indication.

2) The supplied Customer Engine Event / Removal Form States " Engine was involved in what appears to be an inflight fire suspected to have been caused by the failure of either the CSD or generator.  This failure resulted in the aircraft having the right engine shutdown and being diverted to FLG, where it made an emergency landing".

3) The Phoenix, AZ police report stated that the police officer observed "metal shavings on the cover and some other jagged metal pieces that were apparently broken".

4) The Flagstaff Pulliam Airport Aircraft incident record states "The crew from Eng 6 opened the cowling on the No. 2 engine.  The fire had been extinguished (in flight) when the flight crew dispensed both fire bottles.  It was discovered that the A/C generator had suffered a catastrophic failure".

5) From Allegiant Air Defect Report from 09/10/2009—07/25/2010

   A) N880GA 11/18/2009 :During climb-out left CSD oil temp reached 180%C. Disconnected CSD: Corrective action; found dpi popped on CSD filters. R&R filters and oil. Sys ops cks normal.

   B) N880GA 11/01/2009: Oil on ground from left engine. Corrective action: found inlet coupling leaking on CSD. R&R CSD oil inlet coupling.

   C) N880GA 11/08/2009: LH CSD spline stripped out. Corrective action: R&R #1 engine CSD per MM 24-10-00.

   D) N880GA 03/17/2010: Rt CSD overtemp and disconnected. Corrective action: Changed CSD oil and filters. Ops & leak ck good.

   E) N880GA 03/20/2010: RH CSD overtemp in cruise. Diverted to LAS. Corrective action: serviced CSD per MM 24-10-00. Ops ck normal.

   F) N880GA 07/25/2010: enroute R. AC crosstie lock out, R. AC electrical failure. Pilots statement also indicated increase in oil temperature, increase in right CSD. Corrective action: R&R #2 engine.

6) The Timco preliminary teardown report for engine S/N 725605 dated 08/19/2010 states: " GEARBOX: Visually inspected for continue time service and found the mail oil tank assembly leaking. During inspection the oil tank was found to be cracked at the oil tube transfer boss so a replacement tank was installed.

7) Additional information from Allegiant Air Defect Report from 09/10/2009—07/25/2010 (**Right engine from aircraft N880GA was originally on aircraft N404NV in left position**)

   A) N404NV 01/21/2009 : CSD leaking from CSD output pad drain. Corrective action performed ops check of CSD per MM 24-10-01. Ops ck good, no leaks.

   B) N404NV, 02/15/2009: remove and replace #2 CSD oil cooler assy. Due to log page #108307. Corrective action removed and replaced #2 oil cooler CSD. Leak checked No leaks.

   C) N404NV. 02/16/2009: R CSD outlet temp steady 180 degrees with R CSD oil press lo. Corrective action: removed and replaced #2 CSD iaw MM 24-10-01. Ops checks normal no leaks noted.

D) N404NV. 07/06/2009: Oil leaking from #2 engine constant streak at idle from CSD service port area of cowl. Corrective action: R&R #2 CSD iaw AMM 24-10-01. Ops check good.

## EVACUATION SLIDES

8) Flight attendant #1, Paul Taylor stated "We opened or doors and pulled the inflation handles since they did not deploy immediately, the OWE were used and the L2 was attempted, however the slide did not inflate".

9) Flight Attendant #2, Arline Parker stated " I released my harness, shecked my door for heat and checked the peep hole for fire, smoke, dtc. We got the command to evacuate so I opened my door and went down the catwalk. The tailcone had dropped and my slide deployed so I pulled the red inflation handle and stepped to the side. By that time, the pax were alresdy coming down the catwalk".

10) Flight Attendant #3, Kristin Bustamante stated " John and myself opened our doors and pulled the manual inflation handles on the slides, as they did not automatically inflate".

11) From a CNN report on Allegiant Airlines slides dated September 20, 2013. During a routine investigation following the emergency evacuation of an Allegiant flight, the Federal Aviation Administration discovered the inflatable emergency slides that deploy from the side doors of the aircraft were being overhauled only once every three years instead of annually, as required. This resulted in Allegiant Air grounding 52 of their aircraft and many flights were operated with significant delays.

## Opinions

1) In my professional opinion it is more likely than not that oil leaking from the CSD was the cause of or a contributing factor to the intensity of the fire on the number 2 engine on N880GA on 07/25/2010.

2) In my 45 year as an aircraft mechanic which included 35 years as an FAA airworthiness safety inspector and 14 years as a Principal Maintenance inspector for a large air carrier, I have never seen that many CSD failures period, let alone on one or two aircraft.

3) In addition to issues surrounding the engine, generator and Constant Speed Drive, it is evident to me that there are underlying maintenance issues in regard to the L 2 slide that failed to deploy and the L1 and R1 door slides that failed to auto deploy.

4) Based on the information supplied it would appear that there was a 100% failure rate of the door slides to auto deploy. Two of the slides did manually deploy when the flight attendants pulled the manual inflation handle.

5) Most large air carrier operators have a maintenance control department that maintains oversight of items like these. It is unknown at this time if the allegiant air maintenance control department was providing adequate oversight of issues like these.

6) Based on available information, It is more likely than not that Allegiant Air is negligent on the maintenance of this aircraft and that that lead to Mr. Desch's injuries.

### Supplementation of Opinions:

I reserve the right to supplement the above report if additional information is provided to me after the date of this report.

### Compensation:

My billable hourly rate is $225.00/hour. My rate for depositions and /or trial is $275/hour. All expenses are billed at actual cost. I receive no compensation based on the outcome of this case.

### Previous testimony during the past 4 years:

I have not given testimony.

I have given a deposition in theBernard Clarke v. Express JetAirlines, INC.

_____
Leonard F. Swope

Dated May 28, 2014

# EXHIBIT B



Kimberly G. Allen
Attorney
Direct: (602) 530-8173
Email: kim.allen@gknet.com

Thomas A. Burnett
Burnett Law Office, PLC
1744 South Val Vista Drive, Suite 208
Mesa, AZ  85204

    Re:   **Desch v. Allegiant Air**

Dear Tom:

    We have had an opportunity to review your proposed Joint Pre-trial Statement and your most recent disclosure statement and would like to offer some suggestions and compromises.

    In regards to the category "other damages" Plaintiff alleges he will seek:

> "punitive damages and any civil penalties which apply to the causes of action, declaratory relief, pre and post judgment interest, reasonable attorneys' fees, expert witness fees and other costs, as well as any other further relief which the Court deems just and proper, including any extraordinary, equitable and/or injunctive relief as permitted by law or equity to impost a constructive trust upon Defendants' assets to assure that Plaintiff has an effective remedy."

So as to not go through the exercise of writing motions that may not be needed, freeing up more time for both sides to prepare for trial, we ask that you let us know if you intend to pursue these "other damages" at trial.  If you do, we will file Motions in Limine on the anticipated damages.  If not, however, your statement that you will not be pursuing such damages will suffice and no motions or your response thereto need be filed.

    In regards to the witnesses you anticipate to call at trial you have listed several that you have not previously disclosed.  Pursuant to Rule 26(a)(1)(i), a party must provide to other parties the name, and if known, the address and telephone number of each individual likely to have discoverable information, along with the subjects of that information that the disclosing party may use to support its claim or defenses.  If you do intend to proceed with calling the previously undisclosed witnesses, we will move forward with filing Motions in Limine to preclude their testimony based upon your non-disclosure.  If, however, you agree that you will not be calling the undisclosed witnesses, your agreement will suffice and no motion or response thereto need be filed.

July 9, 2015
Page 2

   Lastly, the medical records and bills disclosed contain several records and bills unrelated to Desch's neck and shoulder pain, the only injuries he testified relate to the emergency evacuation. We will agree that you will not need to bring in treatment providers to lay the foundation for the medical records and bills that are specific to neck and shoulder treatment only. We will, however, be unable to stipulate to the foundation of any records and bills not solely related to neck and shoulder pain.

   If you are willing to remove the records and bills not solely related to Plaintiff's neck and shoulder pain, we will stipulate to the foundation of all the remaining records. If you are not willing, however, we request that you bring in treatment providers to lay the foundation as to the unrelated medical treatment Plaintiff Desch received following the emergency evacuation.

   In terms of the reasonableness of the treatment Plaintiff Desch has received following the emergency evacuation, we are unable to stipulate as we have contested and will continue to contest that the treatment he received was solely related to the emergency evacuation.

   Please let us know, by Tuesday, July 14, if you will agree not to present the category of "other damages" at trial and if you will agree to removing the witnesses not previously disclosed as well as the medical records and bills not solely related to Plaintiff's neck and shoulder pain. We are happy to discuss this with you further if necessary.

              Very truly yours,

              GALLAGHER & KENNEDY, P.A.

              By: */s/ Kimberly Allen*
                 Kimberly G. Allen

KGA

EXHIBIT C

# Weaver, Sharlee M.

**From:** Mark Pierce <mpierce@slackdavis.com>
**Sent:** Wednesday, July 15, 2015 10:30 AM
**To:** Allen, Kimberly G.
**Cc:** Paula Knippa; Thomas Burnett; Tonya Strickland; Weaver, Sharlee M.; Neal, Kevin D.
**Subject:** RE: Desch v. Allegiant

Counsel—
With the history regarding Mr. Carpenter, we don't believe that our reserving the right to call Allegiant's corporate representative in our case allows Allegiant to somehow bootstrap that into a designation that would permit Mr. Carpenter to be called in Allegiant's case in chief.
Regarding our witnesses, as I said in my original email to you, we believe they have been adequately disclosed.
Regarding medical records, we will make a careful review and pull records, if any, that are unrelated.
Thanks.
Mark

**From:** Allen, Kimberly G. [mailto:kim.allen@gknet.com]
**Sent:** Monday, July 13, 2015 5:11 PM
**To:** Mark Pierce
**Cc:** Paula Knippa; Thomas Burnett; Tonya Strickland; Weaver, Sharlee M.; Neal, Kevin D.
**Subject:** RE: Desch v. Allegiant

Mark,
I just sent another email to you, Paula and Tom regarding additional Motions in Limine. Please review and respond when you have a moment.

In regards to Kurt Carpenter, both Plaintiff's most recent supplemental disclosure statement and joint pre-trial statement list "Defendant Allegiant's Corporate Representative(s) at trial, fact witness, and/or expert witness . . .may testify as to Allegiant's inspection and maintenance procedures regarding emergency slides and/or Constant Speed Drive/generator." Kurt Carpenter will be Allegiant's Corporate Representative. Mr. Carpenter is also an employee of Allegiant and will be called as a fact witness.

In regards to witnesses that have not been disclosed, please compare your most recent cumulative disclosure statement with your proposed joint pretrial. There are several witnesses that have been listed that were not formally disclosed.

In regards to the medical records, Plaintiff has the burden to prove that all treatment received was reasonable and necessary and to lay foundation for the admissibility of such records. As referenced throughout Dr. Bode's deposition, several office visits of Mr. Desch pertained to not only his neck and shoulder, but other ailments as well. As stated in our letter, if *you* are willing to remove records and bills not solely related to Plaintiff's neck and shoulder treatment, we will stipulate to the foundation of all the remaining records. If you are not willing to comb through the records to search for those that are strictly related to the neck and shoulder, versus those that contain treatment for other ailments, we will request that you bring in the treatment providers to lay the foundation as to the unrelated medical treatment.

Please let me know if you are willing to do as requested regarding the medical records, and if you have any further questions. We too look forward to working out any issues that may arise.

# Weaver, Sharlee M.

| | |
|---|---|
| **From:** | Mark Pierce <mpierce@slackdavis.com> |
| **Sent:** | Wednesday, July 15, 2015 10:52 AM |
| **To:** | Allen, Kimberly G.; Tom Burnett (tom@burnettlawaz.com) |
| **Cc:** | Paula Knippa; Neal, Kevin D.; Weaver, Sharlee M. |
| **Subject:** | RE: Desch v. Allegiant |

Plaintiff's proposed motions in limine...
1. Motion in Limine to Preclude Evidence of Collateral Source and/or other Insurance
2. Motion in Limine to Preclude Evidence of any Reference to Injuries for which Plaintiff is not Making Claims
3. Motion in Limine to Preclude Evidence of any Reference to Documents, Witnesses, or Evidence regarding any Determination of the Root Cause of CSD/generator Fire or Overheat.

Defendant Allegiant Air's Proposed Motions in Limine...
1. Motion in Limine to Preclude Claims for Lost Wages and Future Medical Damages: OPPOSED
2. Motion in Limine to Preclude Claims for Punitive Damages and "Other" Damages: AGREED to the extent of my July 13 email to you (regarding punitive damages, attorneys' fees, and equitable/injunctive relief)
3. Motion in Limine to Preclude Testimony and Affidavit of Nathaniel Odel: AGREED AS TO AFFIDAVIT, OPPOSED AS TO TESTIMONY
4. Motion in Limine to Preclude Newspaper Articles and News Stories Not Specific to Flight #645: AGREED
5. Motion in Limine to Preclude Exhibits and Witnesses Not Formally Disclosed Prior to Close of Discovery: OPPOSED


**From:** Allen, Kimberly G. [mailto:kim.allen@gknet.com]
**Sent:** Monday, July 13, 2015 4:42 PM
**To:** Tom Burnett (tom@burnettlawaz.com)
**Cc:** Mark Pierce; Paula Knippa; Neal, Kevin D.; Weaver, Sharlee M.
**Subject:** Desch v. Allegiant

Tom,
In addition to the letter I sent last week discussing the medical records and some anticipated Motions in Limine, per the Rules, we are required to discuss all anticipated Motions in Limine. I ask that you review the following list to determine if you will oppose the anticipated Motions. If you do intend to oppose the Motions we will move forward in preparing the Motions. If, however, you do not intend to oppose the Motion, we will rely on your word and not file prepare or file the proposed Motion.

Please also allow us to review your list of proposed Motions in Limine as required by the Rules.

Defendant Allegiant Air's Proposed Motions in Limine
1. Motion in Limine to Preclude Claims for Lost Wages and Future Medical Damages
2. Motion in Limine to Preclude Claims for Punitive Damages and "Other" Damages
3. Motion in Limine to Preclude Testimony and Affidavit of Nathaniel Odel
4. Motion in Limine to Preclude Newspaper Articles and News Stories Not Specific to Flight #645
5. Motion in Limine to Preclude Exhibits and Witnesses Not Formally Disclosed Prior to Close of Discovery

As the Motions in Limine are due on Monday, July 20, I ask that you review this list and respond no later than July 15 at 12 with your Answer as to whether you will oppose the anticipated Motions, or if we can come to an agreement on a

few of the Motions listed. I also ask that you provide us with your list by tomorrow, so that we will have adequate time to provide you with feedback so you do not spend time writing Motions that are unnecessary.

Thank you

Gallagher&Kennedy
2575 E. Camelback Road, Suite 1100
Phoenix, Arizona 85016-9225
602-530-8000 | www.gknet.com

**Kimberly G. Allen**
Attorney Profile
kim.allen@gknet.com
602-530-8173



2