# EXHIBIT B

C6-7 level as well, in spite of stable construct. I believe claimant has had a direct aggravation of preexisting cervical degenerations across the C4 to C6 discs and possibly even exacerbation of symptoms across the surgical level at C6-7 related to the fall, causing the worsening symptomatology post injury.

2. Do you believe the medical care provided to John Desch relating to the new injry or aggravation was reasonable and necessary? Do you believe the bills that were charged for that care were customary in the community?

   Question #1-2: Answer:
   I believe that the extensive treatment that the claimant underwent status post injury to try and achieve resolution of his symptoms was well thought out, appropriate, and initially conservative followed by more progressive interventional techniques to alleviate symptoms. All the treatments were within reason given the severity of symptoms as well as result of diagnostic studies. I do not think any of the treatments were unnecessary or inappropriate. All of the treating physicians demonstrated restraint, appropriate diagnostic interventions with subsequent interventions wholly directed at trying to alleviate or reduce a patient's pain and suffering. The bills that were charged for subsequent care were usual and standard for the community.

2. Can you say to a reasonable degree of medical probability that the incident on 7/25/2010 caused new injury to John's left shoulder? Can you say to a reasonable degree of medical probability that the incident aggravated previous injury or conditions to John's left shoulder?
   1. If yest to either, please explain what was injured or aggravated and the basis for your opinions(s).

      Question #2-1: Answer:
      To my knowledge, there are no prior imaging studies of claimant's left shoulder. That being said, there is no way to definitively diagnose John with a new left shoulder injury. However, claimant had a exacerbation of left shoulder pain and discomfort status post injury with post injury MRIs demonstrating labral pathology and rotator cuff fraying with inflammation. Whether these lesions were present pre-injury or not is not of consequence. There was definite exacerbation of these conditions status post fall. Mechanism of fall correlates with associated shoulder injuries as well.

   2. Do you believe the medial care provided to John Desch relating to the new injury or aggravation was reasonable and necessary? Do you believe the bills that were charged for that care were customary in the community?

      Question #2-2: Answer:
      As with the treatment of claimant's cervical condition, I believe interventions directed towards his shoulder were also appropriate, well thought out, appropriately timed, necessary, and within the standard of care for the community. In addition, subsequent bills were also usual and customary for the treatment he received in the community as well.

3. What is John Desch's prognosis related to these injuries or conditions? Are the injuries or aggravations permanent? Are you able to provide a disability rating? What do you expect his limitations to be if any?

   Question #3: Answer:
   Unfortunately, the claimant's prognosis I believe is not good. Claimant has had persistent symptoms related to neck pain, parascapular discomfort, paresthesias, shoulder pain as noted for greater than four years. Claimant continues with significant complaints and impairments, as noted. Claimant has also undergone extensive treatments in attempts to alleviate symptomatology with nominal improvement. I believe at this point these symptoms are likely to be permanent. An impairment rating which would include a multiply operated neck with constant pain and paresthesias in addition to some shoulder pathology (limitation of range of motion, mild weakness). Twenty percent (20%) whole person impairment regarding the cervical spine with a 10-15% upper extremity impairment regarding the left shoulder which would be an additional 5% whole person for a total of 25% whole person impairment. Claimant is going to continue to have significant limitations as far as quality interactions with family and loved ones, difficulty with activities of daily living, as well as work-related activities and pleasurable activities. Claimant can only hope to use palliative measures and medications in an attempt to diminish symptoms to improve quality of life.

4. With respect to future medical care: are you able to offer any opinions regarding the need for future medical care, what type of care will more likely than not be needed, and the anticipated cost of that care?

   Question #4: Answer:
   With regard to any future medical treatment for the claimant, I did discuss with the claimant possible additional interventions which may or may not provide symptomatic relief. We did discuss the possibility of extending his cervical fusion an additional two levels spanning the adjacent C4-5 and C5-6 discs. There is a possibility that this may alleviate some of his persistent neck pain and paresthesia complaints. This intervention could be quite costly in the $100,000-$150,000 range. However, the greater question would be if further surgical fusion is going to significantly alleviate claimant's symptoms or not? However, this could be possible further treatment option should adjacent levels continue to deteriorate and symptoms worsen(adjacent level disease). There is also a possibility that a shoulder arthroscopy with labral repair and subacromial decompression could alleviate some of the patient's shoulder complaints. Again, how much symptomatic improvement that intervention would achieve is uncertain. It is possible, should future deterioration of the shoulder and labrum or rotator cuff occur, that this could be necessary. Estimates for this would be in the $10,000-$20,000 range. More than likely, claimant will continue with palliative treatment measures to try and control symptoms to include consultations with his interventional pain specialists, intermittent physical therapy or chiropractic treatments for exacerbations, intermittent consultations two to three visits per year for orthopedic spine or shoulder or neurologic consultants. Possibility also remains of intrathecal pumps continue to provide nominal symptomatic relief at some point removal of these pumps may be indicated. Estimates for removal of retained implants could range in the $10,000-$15,000 range as well. As stated, claimant should have access to continued medical management of